IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **JANE FITTS** | : |
| Plaintiff, | : |
| v. | : No. 1:98-CV-00617 (HHK) |
| **FEDERAL NATIONAL MORTGAGE ASSOCIATION** | : |
| -and- | : |
| **UNUM LIFE INSURANCE COMPANY OF AMERICA** | : |
| Defendants. | : |

---

**PLAINTIFF'S TRIAL MEMORANDUM**

    In this action for *de novo* review of the denial by an insurance company, defendant Unum, of disability benefits, this Court, by Memorandum Opinion and Order, held as a matter of law that the Unum policy must be construed against Unum and in a manner that is reasonable and most favorable to Ms. Fitts. The Court further held that the Unum policy's "mental illness" exception is inapplicable as a matter of law to bipolar disorder. (2/23/06 Mem. & Order at 15-16). The Court further held that the "question that remains then, is whether Fitts has been properly diagnosed as someone suffering from bipolar disorder" and noted that Unum vehemently disagrees with Fitts on the answer to this question.

    The evidence will prove that plaintiff Jane Fitts suffers from bipolar disorder and is disabled under defendant Unum's Group Long Term Disability Insurance Policy, Policy

1

No.316933 (Pl. Ex. S).  The evidence will further lead to the inescapable conclusion that Unum's prior vehement disagreement that Ms. Fitts does not suffer from bipolar disorder is a bad faith contrivance.

**Ms. Fitts Suffers from Bipolar Disorder**

The direct testimony of five health care professionals confirms that Fitts has been properly diagnosed with bipolar disorder.  That includes the direct testimony of three witnesses testifying for the plaintiff (Drs. Griffin, Goodwin and Hyde) and two witnesses testifying for the defendant Unum (Drs. Ratner and Mirkin).

In addition, Johns Hopkins Hospital and Georgetown University Hospital both diagnosed Ms. Fitts as having bipolar disorder.  (Pl. Ex. D and G).

**Defendant's Feigned Vehement Disagreement is Insincere and Disingenuous**

Defendant Unum does not genuinely dispute that Ms. Fitts has bipolar disorder.  Rather, Unum, after conceding through the direct testimony of Drs. Ratner and Mirkin, uses the legally meaningless direct testimony of a supposed expert, Dr. Hegarty, who opines that the bipolar diagnosis of the five other witnesses and the two hospitals is "questionable."

Suffice it to say that Unum cannot properly tender as direct expert opinion testimony the opinion of a witness who fails to opine to a reasonable degree of medical certainty that Ms. Fitts does *not* have bipolar disorder.  Unum's use of Hegarty's testimony in itself comprises proof of bad faith on Unum's part in denying coverage to Ms. Fitts.  The law accords no weight to Hagerty's testimony.  Underscoring that conclusion, Hegarty never evaluated Ms. Fitts, but instead reviewed her records.

The question which the Court ordered tried – "whether Fitts has been properly diagnosed as suffering from bipolar disorder" – can only be answered "yes."

**<u>Defendants' New Argument Lacks Factual and Legal Merit</u>**

Defendant seeks to change the issue, from "whether Fitts has been properly diagnosed as someone suffering bipolar disorder," to a theory that, although Unum concedes Ms. Fitts suffers bipolar disorder, it claims she has that disorder plus a "personality disorder" which supposedly would disable her even if psychotropic medication were able adequately to control her bipolar disorder.

Assuming, *arguendo*, that the Court were to entertain this notion – of bipolar disorder being overridden by a disabling personality disorder if the bipolar disorder could be adequately controlled – Unum will not prevail at trial.

Psychiatric terminology calls the bipolar disorder an "Axis I" disorder and the putative personality disorder an "Axis II" disorder. Defendant Unum will not ascribe a specific "Axis II" diagnosis to Ms. Fitts. Instead, defendants' witnesses will throw out possibilities, with defendant arguing that the existence of a possible ephemeral, putative personality disorder overrides the bipolar disorder as disabling Ms. Fitts.

The evidence will show that defendants' supposed "personality disorder" diagnosis fails to meet required diagnostic criteria, including that it "has onset in adolescence or early adulthood." DSM-IV pg. 629. The undisputed evidence of Ms. Fitts many achievements during her adolescence, early adulthood and into middle age – such as graduating highschool, Fordham University in 1971 with a bachelor's degree, earning a Master of Arts from Columbia University in 1977, earning a Juris Doctor from Fordham University in 1977, passing the New York bar examination in 1978, subsequently working as an attorney for the US Securities and Exchange Commission, a corporate and securities attorney for US Life Corporation and then in-house counsel for Fannie Mae for over 13 years during which time she received numerous promotions –

3

refute the criterion that Unum must prove to sustain a "personality disorder" diagnosis.

Instead of *proving* that Ms. Fitts has a disabling "personality disorder," Unum witnesses will testify that there exist overlapping features of bipolar disorder and certain personality disorders and use the overlap to conveniently arrive at a conclusion that a personality disorder diagnosis might explain Ms. Fitts's disability.  The evidence will show that, even if Ms. Fitts has a personality disorder, such disorder would have been present during her adolescence and/or early adulthood and did not prevent her from achieving success.

The overlapping features of bipolar disorder (as to which no genuine dispute that Ms. Fitts has that disorder) cannot, however, be attributed to the supposed personality disorder to the exclusion of the conceded bipolar disorder.  The facts will show that, if Ms. Fitts does have a personality disorder, is secondary to the devastating effects of her bipolar disorder.  The facts will show that, if Ms. Fitts does have a personality disorder, is does not override the devastating effects of her bipolar disorder.

**Ms. Fitts's Bipolar Disorder is Disabling**

Unum's Group Long Term Disability Insurance Policy, Policy no. 316933 defines disabled as "the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted taking into consideration training, education, or experience."  As a matter of law, this language requires the gainful occupation to be one *commensurate* with Ms. Fitts' training, education and experience[1].  This has long been the law of the District of Columbia.  *Blaustein v. Connecticut General Life Insurance*, 207 F. Supp. 223, 224-25 (D.D.C.

---

[1] *See Erreca v. Western States Life Insurance Co.*, 19 Cal. 2d 388, 393-94, 121 P.2d 689, 694 (Cal. 1942); *Harker v. Paul Revere Life Insurance Company*, 28 Wis. 2d 537, 547, 137 N.W.2d 395, 400-01(Wis. 1965); *Prudence Life Insurance Company v. Wooley*, 254 Miss. 500, 506-07, 182 So.2d 393, 396 (Miss. 1966); *Stout v. Central National Life Insurance Company*, 522 S.W.2d 124, 130 (Mo. Ct. App. 1975).

1962). There, the Court held that a person trained and experienced in a highly skilled trade or profession need not seek out work which is personally degrading and insubstantially remunerative. *See id.*

Any determination of whether Fitts is disabled under Unum's policy must examine her disability in conjunction with her background, training and experience, taken as one complete whole. *See Moore v. Harris Corp.*, 813 F. Supp. 1556, 1560 (M.D. Fla. 1993). Factors such as the insured's salary history and wage analysis of available options are also properly considered in making the determination of whether an insured is fitted for a particular employment. *Mossa v. Provident Life and Casualty Insurance* Company, 36 F. Supp.2d 524, 530-31 (E.D.N.Y. 1999).

As the California Supreme Court explained:

> This construction of the words 'any occupation' is based upon the theory that it is unreasonable to deprive an uneducated laborer, disabled from performing any manual work, of the benefits of his policy, because he might notwithstanding those disabilities, with training and study, pursue a profession at some future date, or become an accountant or a banker. And it would be equally unreasonable to hold that a doctor, lawyer, or business executive is not totally disabled from engaging in 'any occupation' or from performing 'any work' because he is able to run a news stand or work as a day laborer.

*Erreca* 131 P.2d at 694.

Defendant Unum's witnesses will not genuinely contest that Ms. Fitts cannot perform a gainful occupation *commensurate* with Ms. Fitts's training, education and experience. Rather, they will assert that there must exist some clerical desk or menial job which she could perform for an employer if the employer were willing to make an allowance for her unreliability that flows from her generally being in a state of sever clinical depression. Although the evidence will not sustain that conclusion, even if it did, it would amount to nothing. This is because, as a matter of law, Ms. Fitts is disabled if she cannot perform each of the material duties of a gainful occupation commensurate with her training, education and experience. The testimony of

defendant Unum's witnesses will confirm that Unum is guilty of bad faith in asserting that Ms. Fitts is not disabled within the meaning of the Unum policy.

The evidence will establish that Ms. Fitts has exhibited numerous symptoms and associated features of bipolar including, depression, psychotic features, suicidal thoughts, a suicidal attempt, and occupational failure. *See* DSM-IV pg.352. Ms. Fitts's bipolar disorder has caused documented cognitive deficits. This cognitive deficits resulted in the decline of her IQ level from over 120 to 105 by 1999 (Def. Ex. 7) to 87 by 2004 (Pl. Ex. J). The depression caused by Ms. Fitts's bipolar disorder also disables her from gainful employment. It often prevents her from getting out of bed.

The decline of her intelligence (from an IQ of greater than 120 to an IQ of 87) and her persistent depression prevent Ms. Fitts from working in any job for pay let alone a job that is consistent with her education and experience. She is, therefore, disabled. Personality disorder does not result in any of the disabling features (significant cognitive decline, deep depression, chronic headaches) that prevent Ms. Fitts from resuming work.

**Remand is Unnecessary and Improper**

The Court of Appeals remanded this case to this Court for *de novo* review. The Court of Appeals remanded this case to this Court for *de novo* review. The Court of Appeals squarely rejected Unum's argument that it had discretionary authority to decide the issues as plan administrator with this Court merely giving it legal guidance. There is nothing further for Unum to decide; to the contrary, court-ordered reinstatement of benefits restoratively to the time Unum cut them off is appropriate.

As Unum has no discretion, remand would be error. *See, e.g., Canseco v. Construction Laborers Pension Trust,* 93 F.3d 600, 609 (9th Cir. 1996) (remand to plan administrator not

necessary where no factual determinations remain to be made); *Halpin*, 962 F.2d at 697 (not an abuse of discretion for the district court to reinstate benefits where procedural errors were made by the plan administrator).

Unum's argument -- that there should be a remand because Unum's claims file is bare after 1998 when Unum wrongfully terminated Fitts' benefits – is without merit.  Unum has a complete file, even though it may now choose to call that file a different one than its "claims" file.  Unum petitioned this Court to vacate its February 26, 2002 opinion for the express purpose of allowing Unum to physically examine plaintiff, which Unum subsequently did through two medical experts, encompassing multiple sessions spanning a three month period.  Dr. Ratner explicitly acknowledged when he examined Ms. Fitts on three occasions that he was doing so to assess her continuous disability. (Pl. Ex. N, pg. 2)  Additionally, Unum deposed Fitts' medical expert and subpoenaed and took the depositions of three of Fitts's treating physicians and also deposed the nurse of one of them.

Common sense dictates against remand because if, as Unum claims, District Courts were required to remand cases to the plan administrator, even when, as here, the plan administrator lacks discretion, judicial review is *de novo* and full judicial discovery is afforded the plan administrator, no final judicial relief could ever be obtained under ERISA.  Claimants would just be returned, over and over, to the same insurance company decision maker who originally wrongfully terminated their benefits, for the wrongdoer to now determine what may have changed in the time the litigation took to reach a decision, and with each remand there would necessarily be such a meantime, so the claimant would be perpetually bounced.

December 14, 2006

Respectfully submitted,

| | |
|---|---|
| /s/ Thomas R. Esposito | |
| Thomas R. Esposito (admitted *pro hac vice*) | David E. Schreiber |
| FORD MARRIN ESPOSITO WITMEYER | David E. Schreiber P.C. |
|   & GLESER, L.L.P. | 4550 Montgomery Avenue |
| Wall Street Plaza | Suite 760N |
| New York, New York 10005-1875 | Bethesda, MD 20814 |
| Tel.: (212) 269-4900 | Tel.: (301) 951-1530 |
| Fax: (212) 344-4294 | Fax: (301) 951-1599 |
| *Attorney for Plaintiff Jane Fitts* | *Attorney for Plaintiff Jane Fitts* |